IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Long Beach Mortgage Loan Trust 2005-WL1<br>     *Plaintiff*,<br><br>v.<br><br>BILLY RAY FRIEND and DINA FRIEND,<br>     *Defendants*. | §<br>§<br>§<br>§<br>§   CIVIL NO. 3:20-cv-00005<br>§<br>§<br>§<br>§<br>§ |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2005-WL1, files this original complaint against Defendants, Billy Ray Friend and Dina Friend as follows:

### I.    PARTIES

1.    Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2005-WL1 ("Deutsche Bank") is a national banking association whose main office, as designated in its articles of association, is located in New York.

2.    Billy Ray Friend ("Billy") is an individual domiciled in Texas.  He may be served with process at his residence, 2019 Valley View Drive, Burleson, Texas 76028, or wherever he may be found.

3.    Dina Friend ("Dina") is an individual domiciled in Texas.  She may be served with process at her residence, 2019 Valley View Drive, Burleson, Texas 76028, or wherever she may be found.

## II.     JURISDICTION AND VENUE

4. The court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff's citizenship is diverse from Defendants' citizenship, and the amount in controversy exceeds $75,000 excluding interest and costs.

5. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Defendants reside in this district. Venue is also proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, and the property at issue is situated in this district.

## III.     FACTS

6. On December 19, 1996, Billy purchased the real property located at 2019 Valley View Drive, Burleson, Texas 76028, which is more particularly described as:

> LOT 30, BLOCK 1, BRIARWOOD COUNTRY ESTATES, SECTION II, AN ADDITION TO JOHNSON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME 1, PAGE 63, PLAT RECORDS, JOHNSON COUNTY, TEXAS

("Property").

7. On February 25, 2005, Billy refinanced the Property with an extension of credit from Long Beach Mortgage Company ("Long Beach") in the amount of $150,400 ("Loan") by executing a Texas Home Equity Fixed/Adjustable Rate Note ("Note"), Texas Home Equity Security Instrument ("Security Instrument"), and Texas Home Equity Affidavit and Agreement ("Home Equity Affidavit"), among other documents. Dina also executed the Security Instrument and Home Equity Affidavit.

8. In Section I(J) of the Home Equity Affidavit, Defendants made the following sworn representation and warranty:

> The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application

to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

9. A portion of the proceeds of the Loan ($109,402.12) was used to pay off the purchase-money lien, thereby equitably subrogating Long Beach to the purchase-money lien. Section 23 of the Security Instrument also provides for contractual subrogation as follows:

> Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

10. Defendants received $34,638.23 in cash from the proceeds of the Loan.

11. The Security Instrument secured the Note by granting Long Beach a lien on the Property.

12. After Washington Mutual Bank became Long Beach's successor in interest with respect to the Loan by operation of law, it was placed into receivership with the Federal Deposit Insurance Corporation ("FDIC") and all of its assets, including the Loan, were sold by the FDIC to JPMorgan Chase Bank, National Association ("JPMorgan") on September 25, 2008, pursuant to the FDIC's authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d).

13. On March 27, 2009, JPMorgan assigned the Note, together with all liens, and any superior title, to Deutsche Bank pursuant to an Assignment of Lien subsequently recorded in the real property records of Johnson County, Texas.

14. Deutsche Bank currently has possession of the original Note, endorsed in blank by Long Beach.

15. The Note and Deed of Trust require monthly payments of principal and interest, as well as escrow amounts for taxes and insurance.

16. Defendants are in default of the payment obligations under the Note and Deed of Trust. The Loan is currently due for the June 1, 2009 installment.

17. Defendants have also failed to pay the ad valorem taxes on the Property. Consequently, Deutsche Bank has had to advance funds to pay off the tax liens that have arisen each year.

18. On April 25, 2014, Deutsche Bank's counsel sent Defendants a notice of default and intent to accelerate. The notice was sent by certified mail, postage prepaid, and addressed to Defendants at their last known address. The notice stated that Defendants were in default under the Security Instrument and gave them thirty (30) days to cure the default before the Loan would be accelerated.

19. Defendants did not cure the default within thirty (30) days after receiving the notice of default and intent to accelerate, and are still in default at this time.

20. On September 25, 2018, Defendants' attorney sent Deutsche Bank a Notice of Request to Cure, asserting that the Loan did not comply with Article XVI, Section 50(a)(6)(M)(i) of the Texas Constitution because Defendants allegedly did not receive the notice prescribed by Section 50(g) therein at least twelve days prior to the Loan's closing.

21. Deutsche Bank responded to the Notice of Request to Cure on November 21, 2018, reminding Defendants that the Loan complied with Section 50(a)(6)(M)(i) according to their sworn representation and warranty in the Home Equity Affidavit, warning that they could become personally liable on the Loan if they were to pursue any claim of non-compliance in contradiction to their sworn representation and warranty, and curing any alleged non-compliance by crediting $1,000 to the Loan account and offering to modify the Loan on the terms provided

in TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)(f) and 7 TEX. ADMIN. CODE § 153.96.  Defendants declined the offer to modify the Loan.

22. By filing this complaint, Deutsche Bank hereby accelerates the Loan.

23. The total amount of the debt currently owed on the Loan—including unpaid principal, interest, escrow advances, and other accrued fees and charges—is approximately $336,694.21.  That amount will continue to grow as additional interest, escrow advances, and other fees and charges accrue throughout the pendency of this action.

### IV.   COUNT 1 – JUDICIAL FORECLOSURE OF CONTRACTUAL LIEN

24. Deutsche Bank incorporates for all purposes the allegations set forth in each paragraph above.

25. Deutsche Bank, as mortgagee of the Security Instrument and/or holder of the Note, is entitled to enforce the lien granted in the Security Instrument (the "Contractual Lien").

26. The Contractual Lien is a valid lien against the Property.  To the extent it was invalid at any time due to any alleged failure to comply with Article XVI, Section 50(a)(6)(M)(i) of the Texas Constitution, such failure was cured and the lien was thereby validated by Deutsche Bank's November 21, 2018 response to Defendants' Notice of Request to Cure.

27. There is an uncured default on the Loan.

28. Deutsche Bank is entitled to an order and judgment—pursuant to, and as prescribed in, Rules 309 and 310 of the Texas Rules of Civil Procedure—for judicial foreclosure of the Contractual Lien.

29. Deutsche Bank's debt, damages, and costs at this time are approximately $336,694.21.  That amount will continue to grow as additional interest, escrow advances, and

other fees and charges (including, but not limited to, the attorney's fees and costs Deutsche Bank incurs in bringing and prosecuting this action) accrue throughout the pendency of this action.

## V. COUNT 2 – JUDICIAL FORECLOSURE OF SUBROGATED LIEN(S)

30. Deutsche Bank incorporates for all purposes the allegations set forth in each paragraph above.

31. Deutsche Bank is contractually subrogated to the purchase-money lien in the amount of $109,402.12, plus applicable interest from February 25, 2005.

32. Alternatively, Deutsche Bank is equitably subrogated to the purchase-money lien in the amount of $109,402.12, plus applicable interest from March 27, 2005.

33. Deutsche Bank is also equitably subrogated to each tax lien on the Property that it has discharged by advancing funds to pay such liens, plus applicable interest from the thirtieth (30th) day after the date each such tax lien was discharged. The total amount that Deutsche Bank has advanced to discharge such tax liens is $34,102.63.

34. Deutsche Bank's subrogated liens are valid liens against the Property, and Deutsche Bank is entitled to an order and judgment—pursuant to, and as prescribed in, Rules 309 and 310 of the Texas Rules of Civil Procedure—for judicial foreclosure of such liens.

35. Deutsche Bank's debt, damages, and costs with respect to its subrogated liens are approximately $143,504.75, plus applicable interest from the applicable accrual dates. That amount will continue to grow as additional interest, escrow advances, and other fees and charges (including, but not limited to, the attorney's fees and costs Deutsche Bank incurs in bringing and prosecuting this action) accrue throughout the pendency of this action.

## VI. COUNT 3 – FRAUD/INDEMNIFICATION

36. Deutsche Bank incorporates for all purposes the allegations set forth in each paragraph above.

37. In Section II of the Home Equity Affidavit, Defendants acknowledged and agreed that they could become personally liable for repayment of the Loan if they obtained it by actual fraud:

> **A. No Personal Liability in the Absence of Actual Fraud.** I understand that pursuant to Section 50(a)(6)(C), Article XVI of the Texas Constitution the Extension of Credit is without recourse for personal liability against each owner of the Property and the spouse of each owner and that Lender and its successors and assigns can enforce the promises and obligations in the Note and Security Instrument solely against the Property, unless an owner or spouse of an owner obtains the Extension of Credit by actual fraud.
>
> **B. Inducement and Reliance.** I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties Section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.
>
> **C. Remedies in the Event of Actual Fraud.** If any owner of the Property, or the spouse of an owner, obtains the Extension of Credit by actual fraud, then each owner, spouse of each owner and all borrowers named in the Note agree to indemnify and save Lender and its successors and assigns harmless against any loss, costs, damages, attorneys' fees, expenses and liabilities which Lender may incur or sustain in connection with such actual fraud and any court action arising therefrom and will pay the same upon demand. In addition, the borrowers named in the Note may become personally liable for repayment of the Extension of Credit.

38. When Defendants executed the Home Equity Affidavit under oath, they knew whether they had received the notice prescribed by Article XVI, Section 50(g) of the Texas Constitution at least twelve days earlier. By signing the Home Equity Affidavit, they knowingly made a sworn representation and warranty to Long Beach and its successors and assigns, including Deutsche Bank, that they timely received the prescribed notice. If they did not know when or whether they received the notice, their representation and warranty was made recklessly and without any regard to the truth.

39. By signing the Home Equity Affidavit, Defendants acknowledged their understanding and intent that Deutsche Bank, as an assign of Long Beach with respect to the Loan, would rely on their representation and warranty when purchasing the Loan, and that Deutsche Bank would suffer injury if their representation and warranty was false.

40. Deutsche Bank did, in fact, rely on Defendants' representation and warranty in the Home Equity Affidavit when it purchased the Loan. If that representation and warranty was false, Deutsche Bank has already been injured by the $1,000 it credited to the Loan account in response to Defendants' Notice of Request to Cure, and it could be further injured by loss of its ability to enforce its lien if its response is deemed not to have cured any alleged constitutional deficiency. Defendants agreed to indemnify Deutsche Bank and hold it harmless for any such injuries.

41. Thus, to the extent that Defendants' representation and warranty in the Home Equity Affidavit concerning the Section 50(g) notice was false, they committed actual fraud, they are personally liable for the Loan, and they must indemnify and hold Deutsche Bank harmless for all injuries it may suffer as a result of Defendants' fraud.

## VII.   PRAYER

WHEREFORE, Deutsche Bank prays that, upon final hearing hereof, it be granted an order and judgment for judicial foreclosure of either its lien granted under the Security Instrument or its subrogated lien(s), that Defendants be declared personally liable for the Loan, that Defendants be ordered to indemnify and hold Deutsche Bank harmless for all injuries that any actual fraud by Defendants may have caused, and that Deutsche Bank be awarded all other and further relief to which it is entitled.

Respectfully submitted,

*/s/ Daron L. Janis*
Thomas G. Yoxall
  Texas Bar No. 00785304
  tyoxall@lockelord.com
Daron L. Janis
  Texas Bar No. 24060015
  djanis@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
(214) 740-8000
(214) 740-8800 – Facsimile

COUNSEL FOR PLAINTIFF